Robert S. Green (State Bar No. 136183)
James Robert Noblin (State Bar No. 114442)
Lesley E. Weaver (State Bar No. 191305)
**GREEN & NOBLIN, P.C.**
700 Larkspur Landing Circle, Suite 275
Larkspur, CA  94939
Telephone:  (415) 477-6700
Facsimile:  (415) 477-6710
Email:  gnecf@classcounsel.com

Attorneys for Plaintiff

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARY BUSHEY, Individually and On Behalf of All Others Similarly Situated,<br><br>                    Plaintiff,<br><br>vs.<br><br>KKR FINANCIAL HOLDINGS LLC, PAUL M. HAZEN, CRAIG J. FARR, TRACY COLLINS, ROBERT L. EDWARDS, VINCENT PAUL FINIGAN, R. GLENN HUBBARD, ROSS J. KARI, ELY L. LICHT, DEBORAH H. MCANENY, SCOTT C. NUTTALL, SCOTT RYLES, WILLY STROTHOTTE, KKR & CO. L.P., KKR FUND HOLDINGS L.P., and COPAL MERGER SUB LLC,<br><br>                    Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT FOR BREACH OF FIDUCIARY DUTIES AND VIOLATIONS OF FEDERAL SECURITIES LAWS**<br><br>DEMAND FOR JURY TRIAL |

00084925.000.docx

Plaintiff, by his undersigned attorneys, for this class action complaint against defendants, alleges upon personal knowledge with respect to himself and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.      This is a class action on behalf of the public stockholders of KKR Financial Holdings LLC ("KFN" or the "Company") against KFN and its Board of Directors (the "Board" or the "Individual Defendants"), to enjoin a proposed transaction announced on December 16, 2013 (the "Proposed Transaction"), pursuant to which KFN will be acquired by KKR & Co. L.P. ("KKR"), KKR Fund Holdings L.P., an exempted limited partnership ("Fund Holdings"), and its wholly-owned subsidiary, Copal Merger Sub LLC ("Merger Sub").

2.      On December 16, 2013, the Board caused KFN to enter into a definitive agreement and plan of merger (the "Merger Agreement"), pursuant to which KKR will acquire all of the outstanding shares of Company common stock in a stock-for-stock transaction, with KFN's stockholders receiving only 0.51 common units of KKR for each common share of KFN, which is an implied value for KFN of $12.79 per share based on the closing prices of KFN and KKR the day the Merger Agreement was executed and announced.  At the time of the approval and execution of the Merger Agreement, KKR common units were trading at a price near their 52-week high, while KFN common shares were trading at a price near their 52-week low, thus distorting the fairness of the consideration offered in the Proposed Transaction.

3.      The Proposed Transaction is the product of an unfair process and deprives KFN's public stockholders of the ability to participate in the Company's long-term prospects. Furthermore, in approving the Merger Agreement, the Individual Defendants breached their fiduciary duties to plaintiff and the Class (defined herein).  Moreover, as alleged herein, KFN aided and abetted the Individual Defendants' breaches of fiduciary duties.  Plaintiff also brings claims against the defendants for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 14a-9 promulgated thereunder ("Rule 14a-9").

**CLASS ACTION COMPLAINT FOR BREACH OF FIDUCIARY DUTIES AND VIOLATIONS OF FEDERAL SECURITIES LAWS**

4.     KKR indirectly, externally manages KFN's day-to-day operations, including performing all services relating to the management of KFN's assets, liabilities and operations, and providing KFN with its management team and support personnel.   Moreover, KFN has no employees; rather, all of KFN's executive officers and two of its directors are employees of KKR or one or more of its subsidiaries.  Furthermore, KKR placed six of KFN's current directors on the board of KFN's predecessor, KKR Financial.  As such, KKR controls KFN and the Proposed Transaction must be entirely fair as to process and price.  As described herein, the Proposed Transaction is not entirely fair.

5.     Compounding the unfairness of the Proposed Transaction, defendants issued materially incomplete and misleading disclosures in the Registration Statement filed on Form S-4 with the United States Securities and Exchange Commission ("SEC") on January 15, 2014 (the "Registration Statement").  The Registration Statement is deficient and misleading in that it fails to provide adequate disclosure of all material information related to the Proposed Transaction.

6.     Plaintiff seeks enjoinment of the Proposed Transaction or, alternatively, rescission of the Proposed Transaction in the event defendants are able to consummate it.

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 (federal question jurisdiction), as plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.  The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

8.     This Court has personal jurisdiction over each of the defendants because each either is organized under the laws of, conducts business in, and maintains operations in this District, or is an individual who either is present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

9.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because: (a) one or more of the defendants either resides in or maintains executive offices here; (b) a substantial

1   portion of the transactions and wrongs complained of herein occurred here; and (c) defendants

2   have received substantial compensation and other transfers of money here by doing business

3   here and engaging in activities having an effect here.

**PARTIES**

10.    Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of KFN common stock.

11.    Defendant KFN is a Delaware corporation and maintains its principal executive offices at 555 California Street, 50th Floor, San Francisco, California 94104.  The Company, together with its subsidiaries, operates as a specialty finance company with expertise in a range of asset classes.  KFN's credit segment primarily invests in financial assets, such as below investment grade corporate debt comprising senior secured and unsecured loans, mezzanine loans, private and public equity investments, high yield bonds, distressed and stressed debt securities, and marketable equity securities.  KFN's common stock is traded on the NASDAQ under the ticker symbol "KFN."

12.    Defendant Paul M. Hazen ("Hazen") currently serves as Chairman of the Board. Hazen is also Chairman of Accel-KKR and is a senior advisor to KKR.

13.    Defendant Craig J. Farr ("Farr") has served as a KFN director since 2006. According to the Company's website, Farr is KFN's Chief Executive Officer ("CEO").  Farr is also the head of KKR Asset Management LLC, an affiliate of KKR.

14.    Defendant Tracy Collins ("Collins") has served as a KFN director since August 2006.  Collins is a member of the Audit and Compensation Committees.

15.    Defendant Robert L. Edwards ("Edwards") has served as a KFN director since November 2011.  Edwards is a member of the Audit Committee.

16.    Defendant Vincent Paul Finigan ("Finigan") has served as a KFN director since February 2006.  Finigan is Chair of the Affiliated Transactions Committee and is a member of the Compensation and Nominating & Corporate Governance Committees.

17.    Defendant R. Glenn Hubbard ("Hubbard") has served as a KFN director since October 2004.  Hubbard is Chair of the Nominating & Corporate Governance Committee and is

**CLASS ACTION COMPLAINT FOR BREACH OF FIDUCIARY DUTIES AND VIOLATIONS OF FEDERAL SECURITIES LAWS**

00084925.000.docx

a member of the Audit Committee.

18.     Defendant Ross J. Kari ("Kari") has served as a KFN director since August 2004. Kari is Chair of the Audit Committee.

19.     Defendant Ely L. Licht ("Licht") has served as a KFN director since April 2005.

20.     Defendant Deborah H. McAneny ("McAneny") has served as a KFN director since April 2005.  McAneny is Chair of the Compensation Committee and is a member of the Nominating & Corporate Governance and Affiliated Transactions Committees.

21.     Defendant Scott C. Nuttall ("Nuttall") has served as a KFN director since 1996. Nuttall is also the head of KKR's Global Capital and Asset Management Group, and is actively involved in other companies and funds associated with KKR.

22.     Defendant Scott Ryles ("Ryles") has served as a KFN director since November 2008.  Ryles is a member of the Audit and Affiliated Transactions Committees.

23.     Defendant Willy Strothotte ("Strothotte") has served as a KFN director since January 2007.  Strothotte is a member of the Compensation and Affiliated Transactions Committees.

24.     The defendants identified in paragraphs 12 through 23 are collectively referred to herein as the "Individual Defendants."  By virtue of their positions as directors and/or officers of KFN, the Individual Defendants are in a fiduciary relationship with plaintiff and the other public stockholders of KFN.

25.     Each of the Individual Defendants at all relevant times had the power to control and direct KFN to engage in the misconduct alleged herein.  The Individual Defendants' fiduciary obligations required them to act in the best interest of plaintiff and all KFN stockholders.

26.     Each of the Individual Defendants owes fiduciary duties of loyalty, good faith, due care, and full and fair disclosure to plaintiff and the other members of the Class.  The Individual Defendants are acting in concert with one another in violating their fiduciary duties as alleged herein, and, specifically, in connection with the Proposed Transaction.

-4-

00084925.000.docx

27.     Plaintiff alleges herein that the Individual Defendants, separately and together, in connection with the Proposed Transaction, violated, and are continuing to violate, the fiduciary duties they owe to plaintiff and the Company's other public stockholders, due to the fact that they have engaged in all or part of the unlawful acts, plans, schemes, or transactions complained of herein.

28.     Defendant KKR is a Delaware corporation with its corporate headquarters located at 9 West 57th Street, Suite 4200, New York, New York 10019.

29.     Defendant Fund Holdings is an exempted limited partnership formed under the laws of the Cayman Islands.

30.     Defendant Merger Sub is a Delaware corporation and a wholly-owned subsidiary of Fund Holdings.

## CLASS ACTION ALLEGATIONS

31.     Plaintiff brings this action as a class action, pursuant to Federal Rule of Civil Procedure 23, on behalf of himself and the public stockholders of KFN (the "Class").  Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

32.     This action is properly maintainable as a class action.

33.     The Class is so numerous that joinder of all members is impracticable.  As of October 30, 2013, there were approximately 204,824,159 shares of KFN common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

34.     Questions of law and fact are common to the Class, including, among others:

            a.      Whether defendants have breached their fiduciary duties owed to plaintiff and the Class; and

            b.      Whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

35.     Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature.  Plaintiff's claims are typical of the claims of the

**CLASS ACTION COMPLAINT FOR BREACH OF FIDUCIARY DUTIES AND VIOLATIONS OF FEDERAL SECURITIES LAWS**

00084925.000.docx

1   other members of the Class and plaintiff has the same interests as the other members of the

2   Class.   Accordingly, plaintiff is an adequate representative of the Class and will fairly and

3   adequately protect the interests of the Class.

4       36.     The prosecution of separate actions by individual members of the Class would

5   create the risk of inconsistent or varying adjudications that would establish incompatible

6   standards of conduct for defendants, or adjudications that would, as a practical matter, be

7   dispositive of the interests of individual members of the Class who are not parties to the

8   adjudications or would substantially impair or impede those non-party Class members' ability to

9   protect their interests.

10      37.     Defendants have acted, or refused to act, on grounds generally applicable to the

11  Class as a whole and are causing injury to the entire Class.   Therefore, final injunctive relief on

12  behalf of the Class is appropriate.

<u>**SUBSTANTIVE ALLEGATIONS**</u>

*Background of the Company*

15      38.     According to its website, KFN is a specialty finance company with expertise in a

16  range of asset classes that generates income through its majority-owned subsidiaries.   Those

17  subsidiaries hold financial assets primarily consisting of corporate loans and securities,

18  including senior secured and unsecured loans, mezzanine loans, high-yield corporate bonds,

19  distressed and stressed debt securities, and marketable and non-marketable equity securities.   In

20  addition, those subsidiaries hold working and royalty interests in oil and natural gas properties,

21  as well as interests in joint ventures and partnerships focused on commercial real estate and

22  specialty lending.

23      39.     KFN's core business strategy is to leverage the proprietary resources of its

24  manager with the objective of generating both current income and capital appreciation.

*KKR Controls KFN*

26      40.     KKR controls KFN in a number of respects.   For example, KFN is externally

27  managed and advised by KKR Financial Advisors LLC (the "Manager"), pursuant to a

28  management agreement between KFN and the Manager (the "Management Agreement").   The

**CLASS ACTION COMPLAINT FOR BREACH OF FIDUCIARY DUTIES AND VIOLATIONS OF
FEDERAL SECURITIES LAWS**

00084925.000.docx

Manager is a subsidiary of KKR Asset Management LLC, and an indirect subsidiary of Kohlberg Kravis Roberts & Co. L.P., which is a subsidiary of KKR.   Pursuant to the Management Agreement, the Manager is responsible for KFN's operations and performs all services relating to the management of KFN's assets, liabilities and operations, and provides KFN with its management team and support personnel.

41.    As the Company stated in its Annual Report, filed on Form 10-K with the SEC on February 28, 2013:

> **We are highly dependent on our Manager and may not find a suitable replacement if our Manager terminates the Management Agreement.**
>
> We have no employees. Our Manager, and its officers and employees, allocate a portion of their time to businesses and activities that are not related to, or affiliated with, us and, accordingly, its officers and employees do not spend all of their time managing our activities and our investment portfolio. . . . We have no separate facilities and are completely reliant on our Manager, which has significant discretion as to the implementation and execution of our business and investment strategies and our risk management practices. We are also subject to the risk that our Manager will terminate the Management Agreement and that no suitable replacement will be found. We believe that our success depends to a significant extent upon the experience of our Manager's executive officers, whose continued service is not guaranteed.

42.    In addition, according to the Registration Statement, "[a]ll of KFN's executive officers and Scott Nuttall and Craig Farr, two of KFN's directors, are employees of KKR or one or more of its subsidiaries."   The Registration Statement further states that "[d]ue to the relationship created by the management agreement, members of the KFN board of directors and the KFN management team routinely interact with representatives of KKR in the course of their normal dealings with respect to KFN."

43.    Furthermore, KKR founded KFN's predecessor, KFN Financial, in July 2004. Since KKR Financial's founding but before it commenced its initial public offering, KKR appointed six of KKR Financial's board members, which all currently serve on the twelve-member Board.   Accordingly, KKR controls the management and day-to-day operations of KFN, and the Board is beholden to KKR.

**CLASS ACTION COMPLAINT FOR BREACH OF FIDUCIARY DUTIES AND VIOLATIONS OF FEDERAL SECURITIES LAWS**

00084925.000.docx

*KFN's Stockholders' Interests Will Be Drastically Diminished*

44.     Should the Proposed Transaction be consummated, KFN's stockholders' ownership and voting interests in KKR will be drastically diminished compared to their interests in KFN.  For example, according to the Registration Statement, the KFN stockholders that receive KKR common units will own a "much smaller" percentage of KKR than the ownership percentage they currently own in KFN.  Moreover, in contrast to the KFN's stockholders' current rights, holders of KKR common units are not entitled to elect KKR's general partner, and are not entitled to elect the directors of KKR's general partner.  In addition, holders of KKR common units have only limited voting rights and, therefore, limited or no ability to influence management's decisions regarding KKR's business.  Because of this, KFN common stockholders will have substantially less influence on the management and policies of KKR than they now have on the management and policies of KFN.

45.     In addition, KKR's managing and general partner, KKR Management LLC, manages the business and affairs of KKR's business, and is governed by a board of directors that is co-chaired by KKR's founders, Henry Kravis ("Kravis") and George Roberts ("Roberts"), who also serve as KKR's co-CEOs.  As the Registration Statement states: "Conflicts of interest may arise among KKR's managing partner and its affiliates, on the one hand, and KKR and holders of KKR common units, on the other hand.  As a result of these conflicts, KKR's managing partner may favor its own interests and the interests of its affiliates over KKR and holders of KKR common units."  This is so because KKR's managing partner, including its directors and officers, have limited their liability and reduced or eliminated their duties, including fiduciary duties, under KKR's partnership agreement, while also restricting the remedies available to holders of KKR common units for actions that, without these limitations, might constitute breaches of fiduciary duties.

*The Company is Poised for Future Growth and Success*

46.     On July 23, 2013, KFN issued a press release announcing its financial results for the second quarter ended June 30, 2013.  Among other things, the Company reported that net income available to common shareholders totaled $79.2 million, an increase of 11% from the

**CLASS ACTION COMPLAINT FOR BREACH OF FIDUCIARY DUTIES AND VIOLATIONS OF FEDERAL SECURITIES LAWS**

1  same period of 2012, and net income per diluted common share totaled $0.39.  Moreover, a
2  quarterly cash distribution of $0.21 per common share was declared for the second quarter of
3  2013, and book value per common share was $10.41 as of June 30, 2013.

4       47.     With respect to these results, William C. Sonneborn ("Sonneborn"), former CEO
5  of KFN, stated: "Market volatility during the second quarter provided us with an attractive
6  window to deploy some of our sizable cash balance.  For example, we took the opportunity to
7  issue a new CLO, capitalizing on a less crowded market to accumulate a more favorably priced
8  loan portfolio than was possible in the first quarter."

9       48.     On September 26, 2013, the Company issued a press release announcing that the
10 Board declared a cash distribution of $0.460938 per share on its outstanding 7.375% Series A
11 LLC Preferred Shares.  The distribution was made payable on October 15, 2013 to the holders
12 of record of the Preferred Shares as of the close of business on October 8, 2013.

13      49.     On October 23, 2013, KFN reported that a quarterly cash distribution of $0.22
14 per common share was declared for the third quarter of 2013.  Individual Defendant Farr, who
15 replaced Sonneborn as KFN's CEO after he stepped down in July 2013, stated in the October 23
16 press release that "we found a number of attractive opportunities for capital deployment during
17 the quarter, and we're focusing the business on cash-yielding, credit-oriented strategies in order
18 to drive ongoing shareholder value."

19      50.     In October 2013, KFN's own financial advisor in connection with the Proposed
20 Transaction, Sandler O'Neill & Partners, L.P. ("Sandler O'Neill"), indicated that the
21 Company's price target was $25 per share.  Moreover, Credit Suisse set a price target at $21 per
22 share.  Despite these price targets, the Company entered into the Merger Agreement for an
23 implied value of only $12.79 per share for the Company.

24      51.     Moreover, at the time of the approval and execution of the Merger Agreement,
25 KFN's common shares were trading at a price near their 52-week low, but were on the verge of
26 significantly increasing to account for the Company's improved financial condition.

27      52.     Given KKR's control over the Company's management and the Board, KKR was
28 aware of KFN's poise for growth and success in the near future.  Attempting to take advantage

**CLASS ACTION COMPLAINT FOR BREACH OF FIDUCIARY DUTIES AND VIOLATIONS OF
FEDERAL SECURITIES LAWS**

00084925.000.docx

of the Company's then-depressed trading price, KKR caused KFN to enter into the Merger Agreement following a wholly-inadequate process, as detailed below.

**_The Unfair Process Leading Up to the Proposed Transaction_**

53.    The Proposed Transaction is the result of an unfair process that was tilted in favor of KKR.  After receiving an acquisition proposal from KKR, the Board did not conduct a market check or even consider seeking alternative bidders.  Moreover, despite the fact that the Board established a committee to consider the Proposed Transaction, the members of the committee are beholden to KKR.

54.    In October 2013, KKR informed Individual Defendant Hazen, Chairman of the Board and senior advisor to KKR, that KKR was considering making an offer to acquire KFN.  On October 22, 2013, the Board held a regularly scheduled meeting, during which Hazen informed the Board of KKR's acquisition overtures.  The Board discussed the possibility of such an offer, including that the confidentiality restrictions in the Management Agreement could be read to require that KKR obtain authorization from KFN prior to completing the analysis necessary to make any acquisition proposal.  After discussion, the Board (including Individual Defendants Nuttall and Farr, who are employed by KKR) granted KKR permission to use the information it had about KFN, as well as to access additional information about KFN (although it is unclear what additional information), to make an acquisition proposal.  The Board allowed this without first engaging and consulting with independent outside financial and legal advisors.  The Board also determined that if KKR made an acquisition proposal, the proposal would be reviewed by a transaction committee, but the Board did not establish a committee at this time to negotiate the terms of a proposal with KKR.

55.    On October 30, 2013, KKR submitted a letter to KFN, proposing to acquire KFN in a stock-for-stock transaction for 0.46 KKR common units in exchange for each KFN common share.

56.    On October 31, 2013, the Board held a telephonic meeting, during which it designated a transaction committee comprised of purportedly independent directors, Individual

**CLASS ACTION COMPLAINT FOR BREACH OF FIDUCIARY DUTIES AND VIOLATIONS OF FEDERAL SECURITIES LAWS**

00084925.000.docx

1   Defendants Collins, Edwards, Finigan, Kari, McAneny, and Ryles (the "Transaction
2   Committee").

3       57.   On November 6, 2013, the Transaction Committee held a telephonic meeting and
4   appointed Edwards as its Chair and retained Sandler O'Neill as its financial advisor and
5   Wachtell, Lipton, Rosen & Katz ("Wachtell Lipton") as its legal advisor.  The Registration
6   Statement does not disclose the reasons the Transaction Committee determined to retain these
7   advisors and whether the Transaction Committee considered other advisors.

8       58.   On November 12, 2013, the Transaction Committee met again to consider the
9   terms of KKR's proposal and ultimately determined to inform KKR that the proposed exchange
10  ratio of 0.46 KKR common units per KFN common share was too low and that the Transaction
11  Committee preferred a transaction consisting entirely of cash consideration.

12      59.   On November 19, 2013, representatives of KKR contacted representatives of
13  Sandler O'Neill to communicate a revised proposal for KKR to acquire KFN for consideration
14  consisting entirely of KKR common units, at an exchange ratio of 0.48 KKR common units per
15  each KFN common share.  KKR informed Sandler O'Neill that KKR was unwilling to consider
16  a transaction in which any portion of the consideration included cash.

17      60.   On November 21, 2013, the Transaction Committee held a telephonic meeting,
18  during which it discussed the terms of the revised acquisition proposal made by KKR with its
19  advisors.  The Transaction Committee determined to inform KKR that the proposed exchange
20  ratio of 0.48 KKR common units per KFN common share still did not offer sufficient value to
21  KFN's stockholders and that the Transaction Committee continued to view a transaction
22  including cash consideration as more preferable than an all-equity transaction.

23      61.   On November 26, 2013, KKR submitted a revised proposal to acquire KFN for
24  consideration consisting entirely of KKR common units, at an exchange ratio of 0.50 KKR
25  common units per KFN common share.  KKR also indicated that KKR remained unwilling to
26  consider a transaction in which the consideration included any portion of cash, and that the
27  current offer was KKR's best and final offer.

28

**CLASS ACTION COMPLAINT FOR BREACH OF FIDUCIARY DUTIES AND VIOLATIONS OF FEDERAL SECURITIES LAWS**

62.     On December 9, 2013, Individual Defendant Hubbard, who is not a member of the Transaction Committee, met with Kravis and Roberts, the co-CEOs of KKR, in order to discuss the Proposed Transaction.  At this meeting, Hubbard requested that KKR increase the proposed consideration above the most recently proposed exchange ratio of 0.50 KKR common units per KFN common share.  Kravis and Roberts informed Hubbard that KKR was unwilling to do so.

63.     On December 10, 2013, the Board and the Transaction Committee held meetings. Kravis, Roberts, and other KKR representatives attended a portion of the Board meeting to discuss KKR's business with the Board.

64.     KKR ultimately informed Sandler O'Neill that KKR was willing to increase the proposed consideration to only 0.51 KKR common units per KFN common share, with consideration consisting entirely of KKR common units.  KKR further stated that it would not under any circumstances further increase its offer.

65.     Later in the day on December 10, 2013, Hazen, at Edwards' request, contacted representatives of KKR to request that KKR increase the proposed exchange ratio to 0.52 KKR common units per KFN common share, but was informed by KKR that the currently proposed exchange ratio of 0.51 KKR common units per KFN common share was KKR's best and final offer.  This exchange ratio had an implied value for the Company of only $12.79 per share based on the closing prices of KFN and KKR the day the Merger Agreement was executed and announced.

66.     On December 13, 2013, the Board held a telephonic meeting to discuss the Proposed Transaction.  After a discussion, the Board meeting was adjourned, and a meeting of the Transaction Committee was convened.  At this meeting, representatives of Sandler O'Neill rendered an opinion to the Transaction Committee that the consideration offered by KKR was fair, from a financial point of view, to the holders of KFN common shares, despite the fact that Sandler O'Neill set a price target for the Company at $25 per share only two months prior. Following discussion, the members of the Transaction Committee voted to recommend that the Board approve the Merger Agreement.  Following the conclusion of the Transaction Committee

**CLASS ACTION COMPLAINT FOR BREACH OF FIDUCIARY DUTIES AND VIOLATIONS OF FEDERAL SECURITIES LAWS**

00084925.000.docx

1    meeting, the Board meeting was reconvened and the Board approved and declared advisable the

2    Merger Agreement and the Proposed Transaction.

3         67.    On December 15 and 16, 2013, the board of directors of KKR's managing

4    partner, KKR Management LLC, met to discuss and approve the Proposed Transaction.

5         68.    On December 16, 2013, KKR, Fund Holdings, Merger Sub, and KFN executed

6    the Merger Agreement, and the parties issued a joint press release announcing the Proposed

7    Transaction.

8    ***The Proposed Transaction***

9         69.    The Company entered into the Merger Agreement on December 16, 2013,

10   pursuant to which KKR will acquire all of the outstanding shares of common stock of the

11   Company in a stock-for-stock transaction, with KFN's stockholders receiving only 0.51

12   common units of KKR for each common share of KFN.

13        70.    On December 16, 2013, KFN filed a Form 8-K with the SEC, attaching as

14   Exhibit 2.1 the Merger Agreement.

15        71.    To the detriment of the Company's stockholders, the terms of the Merger

16   Agreement substantially favor KKR and are calculated to unreasonably dissuade potential

17   suitors from making competing offers.

18        72.    For example, the Individual Defendants have all but ensured that another entity

19   will not emerge with a competing proposal by agreeing to a "No Solicitation" provision in

20   Section 6.6 of the Merger Agreement that prohibits the Individual Defendants from soliciting

21   alternative proposals and severely constrains their ability to communicate and negotiate with

22   potential buyers who wish to submit or have submitted unsolicited alternative proposals.

23   Section 6.6(a) of the Merger Agreement states:

24        (a) Subject to Section 6.6(c) through Section 6.6(f), the Company agrees that,
          from the date of this Agreement until the Closing or, if earlier, the termination of
25        this Agreement in accordance with Article VIII, neither it nor any of its
          subsidiaries shall, and that it shall use its reasonable best efforts to cause its and
26        its subsidiaries' directors, officers, employees, agents, investment bankers,
          attorneys, accountants and other representatives (collectively, "Representatives")
27        not to, directly or indirectly, (i) initiate or solicit or knowingly encourage any
          inquiries with respect to, or the making of a Company Acquisition Proposal,
28        (ii) engage in any negotiations concerning, or provide any confidential

-13-

**CLASS ACTION COMPLAINT FOR BREACH OF FIDUCIARY DUTIES AND VIOLATIONS OF FEDERAL SECURITIES LAWS**

information or data to any Person relating to, a Company Acquisition Proposal, (iii) approve or recommend, or propose publicly to approve or recommend, any Company Acquisition Proposal, (iv) approve or recommend, or propose publicly to approve or recommend, or execute or enter into, any letter of intent, agreement in principle, merger agreement, acquisition agreement, option agreement or other similar agreement relating to any Company Acquisition Proposal (each a "Company Acquisition Agreement"), or (v) propose publicly or agree to do any of the foregoing relating to any Company Acquisition Proposal.

73.     Moreover, Section 6.6(g) of the Merger Agreement provides:

(g) The Company agrees that it and its subsidiaries will (i) immediately cease and cause to be terminated any existing activities, discussions or negotiations with any Person (other than the parties) conducted prior to the date of this Agreement with respect to any Company Acquisition Proposal and (ii) request that each third party that has heretofore executed a confidentiality agreement that relates to a Company Acquisition Proposal (other than Parent) return or destroy all confidential information heretofore furnished to such third party by the Company or on its behalf. The Company agrees that it and its subsidiaries will take the necessary steps to promptly inform its and its subsidiaries' Representatives of the obligations undertaken in this Section 6.6.

74.     Further, pursuant to Section 6.6(h) of the Merger Agreement, the Company must advise KKR, within twenty-four hours, of any proposals or inquiries received from other parties, including, *inter alia*, the identity of the party making the proposal and the material terms and conditions of the proposal. Moreover, the Company is required to "keep [KKR] informed orally, as soon as is reasonably practicable, of the status of any Company Acquisition Proposal." Section 6.6(h) of the Merger Agreement states:

(h) From and after the date of this Agreement, the Company shall promptly orally notify Parent of any request for information or any inquiries, proposals or offers relating to a Company Acquisition Proposal indicating, in connection with such notice, the name of such Person making such request, inquiry, proposal or offer and the material terms and conditions of any proposals or offers and the Company shall provide to Parent written notice of any such inquiry, proposal or offer within 24 hours of such event and copies of any written or electronic correspondence to or from any Person making an Company Acquisition Proposal. The Company shall keep Parent informed orally, as soon as is reasonably practicable, of the status of any Company Acquisition Proposal, including with respect to the status and terms of any such proposal or offer and whether any such proposal or offer has been withdrawn or rejected and the Company shall provide to Parent written notice of any such withdrawal or rejection and copies of any written proposals or requests for information within 24 hours. The Company also agrees to provide any information to Parent (not previously provided to Parent) that it is providing to another Person pursuant to this Section 6.6 at substantially the same time it provides such information to such other Person. All information provided to Parent under this Section 6.6

shall be kept confidential by Parent in accordance with the terms of the Confidentiality Agreement.

75.     Moreover, the Merger Agreement contains a highly restrictive "fiduciary out" provision permitting the Board to withdraw its approval of the Proposed Transaction under extremely limited circumstances, and grants KKR a "matching right" with respect to any "Superior Proposal" made to the Company.  Section 6.6(e) of the Merger Agreement provides:

> (e) Notwithstanding anything in this Agreement to the contrary, nothing contained in this Agreement shall prevent the Company from, at any time prior to, but not after, the time of the receipt of the Company Shareholder Approval, in response to the receipt of a written unsolicited bona fide Company Acquisition Proposal after the date of this Agreement that did not result from a breach of Sections 6.6(a)and (g), (i) terminating this Agreement pursuant to Section 8.1(e) in order to enter into a definitive written agreement with respect to such Company Acquisition Proposal or (ii) effecting a Company Change of Recommendation, if, prior to taking any of the actions described in clauses (i) or (ii), (A) the Company Board determines in good faith, after consultation with its outside legal counsel and financial advisors, that (x) failure to take such action would reasonably be expected to be inconsistent with the Company's directors' fiduciary duties under Applicable Law of the State of Delaware and (y) such Company Acquisition Proposal constitutes a Company Superior Proposal, (B) Parent shall have received written notice (a "<u>Superior Proposal Notice</u>") of the Company's intention to take such action at least four business days prior to the taking of such action, and (C) the Company Board continues to believe, after taking into account any modifications to the terms of the transactions contemplated by this Agreement that are offered by Parent after its receipt of the Superior Proposal Notice, that such Company Acquisition Proposal continues to constitute a Company Superior Proposal.  Any material amendment to the financial terms or any other material amendment of such Company Acquisition Proposal shall require a new Superior Proposal Notice and the Company and the Company Board shall be required to comply again with the requirements of this Section 6.6(e); *provided*, *however*, that the reference herein to four business days shall be deemed to be a reference to two business days.

76.     Further locking up control of the Company in favor of KKR is Section 8.2(b) of the Merger Agreement, which contains provision for a "Termination Fee" of $26.25 million, payable by the Company to KKR if the Individual Defendants cause the Company to terminate the Merger Agreement pursuant to the lawful exercise of their fiduciary duties.  KFN may also be required to reimburse KKR for its expenses up to $7.5 million.

77.     By agreeing to all of the deal protection devices, the Individual Defendants have locked up the Proposed Transaction and have precluded other bidders from making successful competing offers for the Company.

**CLASS ACTION COMPLAINT FOR BREACH OF FIDUCIARY DUTIES AND VIOLATIONS OF FEDERAL SECURITIES LAWS**

78.     The consideration to be paid to plaintiff and the Class in the Proposed Transaction is unfair and inadequate because, among other things, the intrinsic value of KFN is materially in excess of the amount offered in the Proposed Transaction.

79.     At the time of the approval and execution of the Merger Agreement, KKR common units were trading at a price near their 52-week high, while KFN common shares were trading at a price near their 52-week low, thus distorting the fairness of the consideration offered in the Proposed Transaction.

80.     In addition, in October 2013, Sandler O'Neill indicated that the Company's price target was $25 per share.  Moreover, Credit Suisse set a price target of $21 per share.

81.     The Proposed Transaction will deny Class members their right to share proportionately and equitably in the true value of the Company's valuable and profitable business, and future growth in profits and earnings.

82.     As a result, defendants have breached their fiduciary duties they owe to the Company's public stockholders because the stockholders will not receive adequate or fair value for their KFN common stock in the Proposed Transaction.

***Defendants' Interests in the Proposed Transaction***

83.     As reflected in the Registration Statement, certain of the Company's directors and officers stand to receive substantial benefits as a result of the Proposed Transaction.

84.     For example, as a result of the Proposed Transaction, the directors and officers of the Company stand to receive substantial benefits for their currently illiquid shares of Company stock.  As reflected in the table below, the directors and officers own approximately 1.6 million shares in the aggregate:

| Name and Address of Beneficial Owner | Number of KFN Common Shares Beneficially Owned |
|---|---|
| Paul M. Hazen | 707,756 |
| Craig J. Farr | 0 |
| Michael R. McFerran | 152,995 |
| Nicole J. Macarchuk | 54,427 |
| Tracy L. Collins | 68,043 |
| Robert L. Edwards | 19,869 |
| Vincent Paul Finigan | 12,607 |
| R. Glenn Hubbard | 55,341 |
| Ross J. Kari | 57,766 |

**CLASS ACTION COMPLAINT FOR BREACH OF FIDUCIARY DUTIES AND VIOLATIONS OF FEDERAL SECURITIES LAWS**

| | |
|---|---:|
| Ely L. Licht | 85,943 |
| Deborah H. McAneny | 33,616 |
| Scott C. Nuttall | 375,564 |
| Scott A. Ryles | 32,688 |
| Willy R. Strohotte | 0 |
| *All officers and directors as a group (14 persons)* | 1,656,615 |

85.    In addition, the restricted KFN common shares held by KKR's directors and executive officers (who are employed by KKR) will be converted into 0.51 restricted KKR common units upon consummation of the Proposed Transaction, as reflected in the following table:

| Director/Executive Officer | Restricted Shares |
|---|---:|
| Craig Farr | 0 |
| Michael R. McFerran | 70,353 |
| Nicole J. Macarchuk | 44,874 |
| Tracy L.Collins | 14,538 |
| Robert L. Edwards | 15,429 |
| Vincent Paul Finigan | 6,548 |
| Paul M. Hazen | 5,057 |
| R. Glenn Hubbard | 0 |
| Ross J. Kari | 14,538 |
| Ely L. Licht | 14,538 |
| Deborah H. McAneny | 0 |
| Scott C. Nuttall | 0 |
| Scott A. Ryles | 14,538 |
| Willy R. Strohotte | 0 |

86.    Moreover, each KFN phantom share owned by the directors of KFN will be converted into a fully-vested phantom share of KKR, as reflected by the table below:

| Director/Executive Officer | Phantom Shares | Restricted Phantom Shares |
|---|---:|---:|
| Craig Farr | 0 | 0 |
| Michael R. McFerran | 0 | 0 |
| Nicole J. Macarchuk | 0 | 0 |
| Tracy L.Collins | 0 | 0 |
| Robert L. Edwards | 0 | 0 |
| Vincent Paul Finigan | 79,179 | 7,990 |
| Paul M. Hazen | 5,770 | 19,864 |
| R. Glenn Hubbard | 211,763 | 20,768 |
| Ross J. Kari | 0 | 0 |
| Ely L. Licht | 0 | 0 |
| Deborah H. McAneny | 53,909 | 14,538 |
| Scott C. Nuttall | 0 | 0 |
| Scott A. Ryles | 0 | 0 |
| Willy R. Strohotte | 179,032 | 14,538 |

**CLASS ACTION COMPLAINT FOR BREACH OF FIDUCIARY DUTIES AND VIOLATIONS OF FEDERAL SECURITIES LAWS**

87.     Accordingly, the Company's directors and officers stand to receive significant benefits and thus have reasons to support the Proposed Transaction, which is otherwise against the best interests of KFN's stockholders

***The Materially Misleading Registration Statement***

88.     Defendants filed the Registration Statement with the SEC on January 15, 2014 in connection with the Proposed Transaction.   As alleged below and elsewhere herein, the Registration Statement omits material information that must be disclosed to KFN's stockholders to enable them to render an informed decision with respect to the Proposed Transaction.

89.     The Registration Statement omits material information with respect to the process and events leading up to the Proposed Transaction, as well as the opinions and analyses of KFN's financial advisor, Sandler O'Neill.   This omitted information, if disclosed, would significantly alter the total mix of information available to KFN's stockholders.

90.     The Registration Statement is materially misleading in that it fails to disclose what authority and/or limitations the Board imposed on the Transaction Committee with respect to considering any proposal from KKR or seeking alternative bidders.

91.     The Registration Statement is materially misleading in that it fails to disclose whether KKR's financial advisors in connection with the Proposed Transaction, Goldman, Sachs & Co. ("Goldman Sachs") and Lazard Frères & Co. LLC ("Lazard"), represented KFN in the past.

92.     The Registration Statement fails to disclose the reason for selecting Sandler O'Neill and whether the Transaction Committee considered other financial advisors.

93.     The Registration Statement is materially misleading in that it fails to disclose the closing price of KFN shares and KKR units each time KKR submitted an offer to acquire the Company at a certain stock-for-stock exchange ratio.

94.     The Registration Statement fails to disclose the reason KKR deemed a taxable transaction preferable to a non-taxable transaction, given the fact that a stock-for-stock transaction could be structured as a non-taxable transaction.

**CLASS ACTION COMPLAINT FOR BREACH OF FIDUCIARY DUTIES AND VIOLATIONS OF FEDERAL SECURITIES LAWS**

00084925.000.docx

95.     The Registration Statement does not indicate the reason the Transaction Committee preferred all-cash consideration and why KKR refused to consider paying any portion of the consideration in cash.

96.     The Registration Statement is materially misleading in that it fails to disclose the Company's projections used by Sandler O'Neill in its analyses.

97.     The Registration Statement fails to disclose the source of analyst consensus estimates that was considered by Sandler O'Neill.

98.     The Registration Statement fails to disclose the projected cost savings and other synergies considered by Sandler O'Neill.

99.     With respect to the Transaction Multiples analysis performed by Sandler O'Neill, the Registration Statement fails to disclose whether there were any dilutive securities reflected in the Company's 204,824,159 outstanding share count, and if so, the fully diluted share count and correct calculation.  In addition, the Registration Statement fails to disclose KFN's net asset value and how it was calculated.

100.    With respect to the Comparable Company Analysis for KFN, the Registration Statement fails to disclose: (i) the company-by-company pricing multiples and metrics and their observed ranges; (ii) the price-to-book multiples, distinguishing between "book value" and "tangible book value" as necessary; and (iii) how Sandler O'Neill used the analysis in assessing the fairness of the offer, given that no value conclusions were reached and no implied exchange ratio was estimated.

101.    With respect to the Comparable Company Analysis for KKR, the Registration Statement fails to disclose: (i) the company-by-company pricing multiples and metrics and their observed ranges; (ii) the definition of "economic net income" ("ENI") and distinguish ENI from "net income"; (iii) how "implied ENI growth" was calculated; and (iv) how Sandler O'Neill used the analysis in assessing the fairness of the offer, given that no value conclusions were reached and no implied exchange ratio was estimated.

**CLASS ACTION COMPLAINT FOR BREACH OF FIDUCIARY DUTIES AND VIOLATIONS OF FEDERAL SECURITIES LAWS**

00084925.000.docx

102.    With respect to the Research Analyst Estimates and Price Targets analysis performed by Sandler O'Neill, the Registration Statement fails to disclose the range of price targets rather than just the mean and median figures.

103.    With respect to the Net Present Value Analysis of KFN performed by Sandler O'Neill, the Registration Statement fails to disclose: (i) what Sandler O'Neill performed its analysis of, and if cash flow, whether they were levered or unlevered (and the definition or formula); (ii) what "circumstances" Sandler O'Neill performed its analysis under; and (iii) the source of the range of P/TBV multiples assumed in Sandler O'Neill's sensitivity table.  The Registration Statement also indicates that Sandler O'Neill sensitized three variables (net income variance [+/- 25%], dividend yields [7.0%-12.0%], and dividend amounts [$0.165-$0.275]). However, the table on page 74 of the Registration Statement only sensitizes two of those variables (net income variance and dividend yield).  This inconsistency must be corrected.

104.    With respect to the Net Present Value Analysis of KKR performed by Sandler O'Neill, the Registration Statement fails to disclose: (i) what Sandler O'Neill performed its analysis of, and if cash flow, whether they were levered or unlevered (and the definition or formula); and (ii) what "circumstances" Sandler O'Neill performed its analysis under.

105.    With respect to the Analysis of Selected Merger Transactions performed by Sandler O'Neill, the Registration Statement fails to disclose: (i) the transaction-by-transaction values and pricing multiples and the observed ranges; and (ii) how Sandler O'Neill used its Analysis of Selected Merger Transactions in assessing the fairness of the offer, given that no value conclusions were reached and no implied exchange ratio was estimated.

106.    With respect to Sandler O'Neill's Pro Forma Results Analysis, the Registration Statement fails to disclose the definitions of "distributable earnings" and "income distribution," and fails to distinguish these from "distributions," "net income," and "Economic net income."

107.    Lastly, the Registration Statement is materially misleading in that it fails to disclose the fees received by Sandler O'Neill from KFN for investment banking services and the nature of those services.

108.    As such, plaintiff seeks enjoinment of the Proposed Transaction.

**CLASS ACTION COMPLAINT FOR BREACH OF FIDUCIARY DUTIES AND VIOLATIONS OF FEDERAL SECURITIES LAWS**

1

2

3

## COUNT I

### (Violations of Section 14(a) of the Exchange Act and Rule 14a-9
### Against the Company and the Individual Defendants)

4   109.   Plaintiff repeats and realleges the preceding allegations as if fully set forth

5   herein.

6   110.   Defendants have issued the Registration Statement with the intention of soliciting

7   stockholder support of the Proposed Transaction.

8   111.   Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange

9   Act, provides that a proxy statement shall not contain "any statement which, at the time and in

10   the light of the circumstances under which it is made, is false or misleading with respect to any

11   material fact, or which omits to state any material fact necessary in order to make the statement

12   therein not false or misleading." *See* 17 C.F.R. § 240.14a-9.

13   112.   Specifically, the Registration Statement violates Section 14(a) and Rule 14a-9

14   because it is materially misleading in numerous respects and omits material facts, including

15   those set forth above.  Moreover, in the exercise of reasonable care, defendants should have

16   known that the Registration Statement is materially misleading and omits material facts that are

17   necessary to render them non-misleading.

18   113.   The Company and the Individual Defendants had actual knowledge of the

19   misrepresentations and omissions of material facts set forth herein, or acted with reckless

20   disregard for the truth.

21   114.   The misrepresentations and omission in the Registration Statement are material

22   to plaintiff, and plaintiff will be deprived of his entitlement to cast a fully informed vote if such

23   misrepresentations and omissions are not corrected prior to the vote on the Proposed

24   Transaction.

25

## COUNT II

26

### (Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)

27   115.   Plaintiff repeats and realleges the preceding allegations as if fully set forth

28   herein.

-21-

116.    The Individual Defendants acted as controlling persons of KFN within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors and/or officers of KFN, and participation in the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement filed with the SEC, they had the power to influence and control, and did influence and control, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

117.    Each of the Individual Defendants was provided with, or had unlimited access to copies of, the Registration Statement and other statements alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

118.    In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations alleged herein, and exercised the same.  The Registration Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of this document.

119.    In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

120.    By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

121.    As set forth above, the Individual Defendants have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.

**CLASS ACTION COMPLAINT FOR BREACH OF FIDUCIARY DUTIES AND VIOLATIONS OF FEDERAL SECURITIES LAWS**

00084925.000.docx

1  As a direct and proximate result of Individual Defendants' conduct, plaintiff and the Class will

2  be irreparably harmed.

3  <u>**COUNT III**</u>

4  **(Breach of Fiduciary Duties Against the Individual Defendants)**

5  122.    Plaintiff repeats and realleges the preceding allegations as if fully set forth

6  herein.

7  123.    As members of the Company's Board, the Individual Defendants have fiduciary

8  obligations to: (a) undertake an appropriate evaluation of KFN's net worth as a

9  merger/acquisition candidate; (b) take all appropriate steps to enhance KFN's value and

10  attractiveness as a merger/acquisition candidate; (c) act independently to protect the interests of

11  the Company's public stockholders; (d) adequately ensure that no conflicts of interest exist

12  between the Individual Defendants' own interests and their fiduciary obligations, and, if such

13  conflicts exist, to ensure that all conflicts are resolved in the best interests of KFN's public

14  stockholders; (e) actively evaluate the Proposed Transaction and engage in a meaningful auction

15  with third parties in an attempt to obtain the best value on any sale of KFN; and (f) disclose all

16  material information to the Company's stockholders.

17  124.    The Individual Defendants have breached their fiduciary duties to plaintiff and

18  the Class.

19  125.    As alleged herein, the Individual Defendants have initiated a process to sell KFN

20  that undervalues the Company.   In addition, by agreeing to the Proposed Transaction, the

21  Individual Defendants have capped the price of KFN at a price that does not adequately reflect

22  the Company's true value.   The Individual Defendants also failed to sufficiently inform

23  themselves of KFN's value, or disregarded the true value of the Company.   Furthermore, any

24  alternate acquiror will be faced with engaging in discussions with a management team and

25  Board that are committed to the Proposed Transaction.

26  126.    As such, unless the Individual Defendants' conduct is enjoined by the Court, they

27  will continue to breach their fiduciary duties to plaintiff and the other members of the Class.

28  127.    Plaintiff and the members of the Class have no adequate remedy at law.

-23-

**CLASS ACTION COMPLAINT FOR BREACH OF FIDUCIARY DUTIES AND VIOLATIONS OF FEDERAL SECURITIES LAWS**

## COUNT IV

**(Breach of Fiduciary Duty of Disclosure Against the Individual Defendants)**

128. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

129. The Individual Defendants have caused materially misleading and incomplete information to be disseminated to the Company's public stockholders. The Individual Defendants have an obligation to be complete and accurate in their disclosures.

130. The Registration Statement fails to disclose material information, including financial information and information necessary to prevent the statements contained therein from being misleading.

131. The misleading omissions and disclosures by defendants concerning information and analyses presented to and considered by the Board and its advisors affirm the inadequacy of disclosures to the Company's stockholders. Because of defendants' failure to provide full and fair disclosure, plaintiff and the Class will be stripped of their ability to make an informed decision with respect to the Proposed Transaction, and thus are damaged thereby.

132. Plaintiff and the members of the Class have no adequate remedy at law.

## COUNT V

**(Breach of Fiduciary Duty Against KKR)**

133. Plaintiffs repeat and reallege the preceding allegations as if fully set forth herein.

134. As set forth herein, KKR effectively controls KFN, including running the day-to-day operations of KFN. As such, KKR owed and owes fiduciary duties to the Company's stockholders.

135. As a product of the negotiated Merger Agreement between KFN and KKR, the Proposed Transaction is subject to entire fairness review. The Proposed Transaction provides grossly inadequate consideration to KFN's public stockholders for their Company stock. The Board and the Transaction Committee lacked independence from KKR and were unable to truly seek out reasonable alternatives or maximize value as a result of KKR's likely refusal to permit

-24-

00084925.000.docx

1   the Board or Transaction Committee to seek strategic alternatives to its proposal.  As such, the

2   Proposed Transaction is unfair as to price and process.

3        136.   Plaintiffs and the Class have no adequate remedy at law.  Only through the

4   exercise of this Court's equitable powers can plaintiffs and the Class be fully protected from the

5   immediate and irreparable injury that KKR's actions threaten to inflict.

6

7   **COUNT VI**

8   **(Aiding and Abetting the Board's Breaches of
Fiduciary Duties Against KFN)**

9        137.   Plaintiff repeats and realleges the preceding allegations as if fully set forth

10  herein.

11       138.   KFN, by reason of its status as a party to the Merger Agreement and/or

12  possession of nonpublic information, has aided and abetted the aforementioned breaches of

13  fiduciary duties.

14       139.   Such breaches of fiduciary duties could not and would not have occurred but for

15  the conduct of KFN which, therefore, has aided and abetted such breaches in KKR's attempted

16  acquisition of KFN.

17       140.   As a result of the unlawful actions of KFN, plaintiff and the Class will be

18  irreparably harmed in that they will not receive true value for KFN's assets and business.

19  Unless the actions of KFN are enjoined by the Court, they will continue to aid and abet the

20  breaches of fiduciary duties owed to plaintiff and the Class.

21       141.   Plaintiff and the Class have no adequate remedy at law.

22  **PRAYER FOR RELIEF**

23       **WHEREFORE**, plaintiff prays for judgment and relief as follows:

24       A.   Ordering that this action may be maintained as a class action and certifying

25  plaintiff as the Class representative and plaintiff's counsel as Class counsel;

26       B.   Preliminarily and permanently enjoining defendants and all persons acting in

27  concert with them from proceeding with, consummating, or closing the Proposed Transaction;

28       C.   In the event defendants consummate the Proposed Transaction, rescinding it and

-25-

**CLASS ACTION COMPLAINT FOR BREACH OF FIDUCIARY DUTIES AND VIOLATIONS OF
FEDERAL SECURITIES LAWS**

00084925.000.docx

setting it aside or awarding rescissory damages to plaintiff and the Class;

        D.     Directing defendants to account to plaintiff and the Class for their damages sustained because of the wrongs complained of herein;

        E.     Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

        F.     Granting such other and further relief as this Court may deem just and proper.

DATED: January 31, 2014           **GREEN & NOBLIN, P.C.**

                                By:   /s/ Robert S. Green    
                                     Robert S. Green

                                700 Larkspur Landing Circle, Suite 275
Larkspur, CA  94939
Telephone: (415) 477-6700
Facsimile: (415) 477-6710

                                **OF COUNSEL:**

                                Seth D. Rigrodsky
Brian D. Long
Gina M. Serra
**RIGRODSKY & LONG, P.A.**
2 Righter Parkway, Suite 120
Wilmington, DE 19803
Telephone:  (302) 295-5310

                                Attorneys for Plaintiff

**CLASS ACTION COMPLAINT FOR BREACH OF FIDUCIARY DUTIES AND VIOLATIONS OF FEDERAL SECURITIES LAWS**